IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

CARLOS VELAZQUEZ-FONTANEZ,
Petitioner,

v.

UNITED STATES OF AMERICA,
Respondent.

CIVIL NO. 23-1117 (JAG)
(Related to Cr. 15-462-66 (JAG))

## UNITED STATES' RESPONSE IN OPPOSITION TO PETITIONER'S MOTION UNDER 28 U.S.C. § 2255 TO VACATE, SET ASIDE, OR CORRECT SENTENCE

The United States of America responds to petitioner Carlos Velázquez-Fontanez's motion pursuant to § 2255 and requests that the Court deny Velázquez's petition to vacate his sentence. In support, the government states as follows:

### INTRODUCTION

On March 10, 2023, Carlos Velázquez-Fontanez ("Velázquez") moved to vacate his conviction and sentence pursuant to 28 U.S.C. § 2255. (Cv. ECF No. 1).[1] He claims he received ineffective assistance from counsel. (*Id.* at 6, 9, 11). He also claims that the Court denied him effective assistance of counsel when it denied his pro se motions for new counsel without entertaining his request. (*Id.* at 10). The latter claim is procedurally defaulted and further waived for lack of development. All his claims lack merit.

### FACTUAL BACKGROUND

The First Circuit succinctly summarized the facts giving rise to Velázquez's conviction in rejecting Velázquez's sufficiency challenge:

---

[1] Reference to the docket entries will be as follows: Criminal No. 15-462 (Cr.), Civil No. 23-1117 (Cv.); The original deadline for filing a § 2255 motion was Nov 14, 2022. (Cr. ECF No. 4572).

1

In 2004, drug traffickers in San Juan, Puerto Rico, formed "La Organización de Narcotraficantes Unidos" ("La ONU"), a cartel designed to reduce conflicts between traffickers and to avoid police scrutiny. By 2008, La ONU had splintered into two rival gangs, La ONU and La Rompe ONU ("La Rompe"). The two groups have since waged war over control of San Juan's most profitable drug distribution territory. At drug distribution "points" under its control, La Rompe sold marijuana, cocaine, crack cocaine, heroin, and prescription drugs. To secure and finance La Rompe's drug-trafficking activities, its members committed robberies, carjackings, and contract killings.

La Rompe's leaders decided who could sell drugs in its territory, ordered lower-ranking members to commit robberies or killings, and authorized La Rompe members to kill fellow members when intra-gang disputes arose. Members rose up La Rompe's ranks by hunting down and killing members of La ONU.

[…]

Velázquez-Fontanez served as a municipal police officer in San Juan. He supplied guns and ammunition to La Rompe members, including his brother, Bebo, a La Rompe enforcer who ran several drug points. When Bebo was incarcerated in 2011, Velázquez-Fontanez helped manage Bebo's drug points. Velázquez-Fontanez delivered packages of marijuana and cocaine to Quija, a "runner" who moved drugs to and from one of Bebo's drug points. Velázquez-Fontanez transported drug point proceeds as well.

The testimony of two cooperating witnesses -- Luis Ivan Yanyore-Pizarro and Oscar Calviño-Acevedo -- also implicated Velázquez-Fontanez in a drive-by shooting. On June 25, 2011, while he was in jail, Bebo used a contraband cell phone to call Quija. Bebo told Quija to go to a business in Caimito (one of San Juan's subdivisions) and kill five men present there, one of whom was known as Prieto-Pincho. Bebo wanted Prieto-Pincho dead because he took control of several of Bebo's drug points. Later that evening, Velázquez-Fontanez called Quija and told him that Prieto-Pincho and his men were outside of the business washing their cars. After one of La Rompe's leaders gave the green light to kill Prieto-Pincho and his men, several members of La Rompe, including Yanyore-Pizarro and Calviño-Acevedo, drove toward the business. As they approached their destination, Yanyore-Pizarro called Velázquez-Fontanez, who confirmed that the men were there and that Prieto-Pincho was "the big guy, who's the one who is speaking over the phone." Yanyore-Pizarro responded that he "already s[aw] them," told

2

Velázquez-Fontanez to "listen to the show," and kept the phone line open as the men exited the car and opened fire, killing Prieto-Pincho and three others.

The next day, Velázquez-Fontanez saw Yanyore-Pizarro in person and told Yanyore-Pizarro that "that sounded awesome" and that "the part [that Velázquez-Fontanez] liked the most was when the rifle continued shooting at the end."

*United States v. Velázquez-Fontanez*, 6 F.4th 205, 211, 214 (1st Cir. 2021), *cert. denied*, 142 S. Ct. 500 (2021).

## PROCEDURAL BACKGROUND

In July 2015, a grand jury charged Velázquez and one hundred and four others in a nine-count indictment. (Cr. ECF No. 3). They charged Velázquez in the first five counts with:

(1) violating the Racketeer Influenced and Corrupt Organizations Act under 18 U.S.C. § 1962(d) ("RICO").

(2) conspiracy to possess with intent to distribute controlled substances within a protected location in violation of 18 U.S.C. §§ 841(a)(1), 846, and 860.

(3) using and carrying firearms during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c)(1)(A).

(4) drive-by shooting in violation of 18 U.S.C. § 36(b)(2)(A).

(5) use and carry of a firearm during and in relation to a crime of violence in violation of §§ 924(c)(1)(A) and 924(j)(1).

(*Id.* at 10, 52, 54, 56-57).

Velázquez was not charged in the four remaining counts, which charged his co-defendants with separate instances of drive-by shootings and use and carry of a firearm during and in relation to a crime of violence. (Cr. ECF No. 3).

On August 20, 2015, Velázquez filed nine pro se motions. (Cr. ECF No. 278, 279, 280, 281, 282, 283, 284, 286, 287). Only one of the nine pro se motions mentioned ineffective assistance of counsel. (Cr. ECF No. 281). An informative motion was filed in Spanish. (Cr. ECF No. 287). Velázquez requested the Court to appoint him new counsel because he claimed he was not

3

receiving effective assistance of counsel. (Cr. ECF No. 281). His stated reasons were that there was "no meaning[ful] communication[] regarding ( . . . ) important matters of [the] case," that they "do not see eye to eye regarding ( . . . ) defense strategy," and that "counsel has denied the defendant the right to be assisted properly." (Cr. ECF No. 281 at 1). In response, the Court ordered that defendant be present with counsel at a hearing. (Cr. ECF No. 319).

On September 2, 2015, Velázquez appeared before the Court along with counsel. (Cr. ECF No. 353). At the outset of the hearing, counsel explained that he had met with his client five times, that they had reviewed the discovery and discussed the merits of certain motions Velázquez wanted to file. (Add. at 3-4). Velázquez then addressed the Court and indicated that he was "innocent of what [he was] being accused of. And the times that I have been able to speak to the attorney have not given me a sense of trust enough to go to a trial." (*Id.* at 5). Velázquez further indicated that he wanted his attorney to file a motion to reconsider the denial of bond. (*Id.*). Velázquez opined that if there was no evidence against him, he should be able to be out on bond. (*Id.*). But his attorney had indicated that he could file the motion, but that it would be denied. (*Id.*). So that is why Velázquez did not trust him. (*Id.*). For his part, counsel responded that Velázquez was not in the videos, but that at the bail hearing the government had proffered testimonial evidence implicating his client. (*Id.* at 6). And that as to other matters such as grand jury transcripts, those would be received in due course. (*Id.*).

Upon the Court's request, the government proffered a summary of the testimony it would present at trial:

> There are multiple cooperating witnesses in this case that will testify he was a runner for Rompe ONU, but more shockingly, as a police officer, he participated in a murder for La Rompe ONU. Two cooperating witnesses are going to show that he was the one that gave the location of rival drug trafficking members, and after he gave the location, while being a police officer, gang members from La Rompe ONU went to the location and murdered four people in that same event thanks to

4

> the information he provided via telephone in that case, Your Honor. So he is charged with his role as a runner.
>
> His brother was also a member of La Rompe ONU. The persons that they went to kill that day, they went to kill him because they took the drug point from his brother, who was incarcerated, who's still incarcerated over a hundred years.
>
> So, Your Honor, the evidence here is cooperating witnesses, who are going to be corroborated by crime scene evidence, pictures, and photos . . . .

(*Id.* at 7-8). Having heard the government's proffer, the Court indicated that it would not grant bail. (*Id.* at 8). The Court also determined Velázquez had not presented any valid reason for appointment of new counsel. (*Id.* at 8). The Court dismissed all the pro se motions without prejudice. (Cr. ECF No. 353). Afterward, Velázquez proceeded to trial.

On day seventeen of the trial, the jury requested clarification on several jury instructions. The jurors requested "further clarification on what conspiracy mean[t] in count two" and asked if "aiding and abetting appl[ied] to count two, four, and five" (Cr. ECF No. 3823 at 6). The Court responded that his "inclination [was] to refer them to instruction number 32" for clarification on what a conspiracy was and that "aiding and abetting [did] not apply to count two, but [did] apply to count[s] four and five." (*Id.* at 7). Codefendant's counsel argued that the Court should ask the jury for more detail. (*Id.* at 8). However, the Court firmly answered, "The answer reads as follows, for the record: please refer to Instruction Number 32 for clarification on what conspiracy means in count two. Aiding and abetting does not apply to count two. It applies to counts four and five." (*Id.*). The Court moved on to the next jury clarification request which read as "we the jurors, request further clarification on Instruction Number 44 regarding the meaning of being present." (*Id.* at 9). The jury note further stated "As you know, the alibi defense is Number 44, and it says: 'One of the issues in this case is whether defendant Carlos Velázquez-Fontanez was present at the time and place of the alleged crime.'" (*Id.*). After it was read, the government quickly stated that

the instruction was highly confusing because the evidence was not that he was present, but that he was handling everything through the phone. (*Id.* at 10). Counsel quickly interjected, "he had to be there to see Prieto as the big guy talking on the phone." (*Id.*). The government pointed out that they did not have to prove aiding and abetting by showing that Velázquez was there when Prieto Pincho was killed. (*Id.*). Counsel responded that it was the pattern instruction and wanted the Court to refer the jury to that instruction. (*Id.* at 10-12). The government reiterated that:

> Within the context of this trial, Instruction 44 is confusing. Because when you read it, and we read it afterward[], it tells them, or implies to the jury, that the evidence had to be that he was physically present there when he was killed, or if not, then he has an alibi, or he can be – he has to be acquitted, when the, when the evidence here was that a person was spotting them out for him, and then he went elsewhere to hear the shots. And that's sufficient for aiding and abetting how he put everything together. But that instruction is trying to force him being in there and counsel knows this. You know, this is no secret. He knows what aiding and abetting is. So, we think Instruction 44 should be tailor-made to this case because it is confusing.

(Id. at 10-11).

The Court offered to answer as follows "please refer back to Instruction Number 44 in connection with the instruction on aiding and abetting." (*Id.* at 12). Counsel agreed to that clarification. (*Id.*) The government again requested the Court say more, "Presence does not require actual physical presence. Please refer to instruction on aiding and abetting in regard[] to that. It doesn't require physical presence." (*Id.*) Counsel once again requested that the Court "refer them to the instructions as they are. It's illogical that presence does not require physical presence." (*Id.* at 13). The Court concluded that it would simply tell them to read Instructions 34 and 44 together. At which point, counsel said "No objection your honor." (*Id.*)

On November 9, 2016, a jury found Velázquez guilty on all five counts. (*Id.* 3823 at 17-18). The jury found that the conspiracy involved one kilogram or more of heroin, five kilograms

or more of cocaine, and one-hundred kilograms or more of marijuana. (*Id.* at 17). The Court sentenced him to 480 months.[2] (Cr. ECF No. 3823 at 17-18).

Velázquez appealed, challenging the sufficiency of the evidence and the district court's responses to the jury's questions. On July 27, 2021, the Court of Appeals rejected Velázquez's argument that the evidence was insufficient and that the district court's clarifications to the jury were inadequate. *Velázquez-Fontanez*, 6 F.4th at 214. Relying on the "ample and competent testimony" presented, the First Circuit found the evidence sufficient. *Id.* at 215. The Court then reviewed Velázquez's instructional error contention for abuse of discretion and found none.

> The defendants did not object to or seek to modify the district court's initial conspiracy instruction. Nor did they suggest any alternative instruction that the district court should have provided in response to the note. Even where a defendant does offer an alternative, we typically do not fault a district court for declining to expand upon its "initial, entirely correct instructions" and instead "refer[ing] the jury to the original formulation." *United States v. Roberson*, 459 F.3d 39,46 (1st Cir 2006) (quoting Elliot v. S.D. Warren Co., 134 F.3d 1, 7 (1st Cir 1998). Defendants have not shown that the district court abused its discretion by sticking to the instruction given here without objection.

*Id*. at 228-29.

Finally, the First Circuit addressed Velázquez's argument that the supplementary jury instruction concerning Instruction 44 was improper. The Court held that the challenge went nowhere because "Velázquez-Fontanez waived his objection when he affirmatively stated that he had '[n]o objection' to the district court's proposed response, which aligned with Velázquez-Fontanez's request that the district court refer the jury to the existing instructions." *Id*. at 229. The

---

[2] The Court later resentenced Velázquez to 300 months after it dismissed one of the §924(c) charges because Velázquez's multiple convictions under § 924(c) arising from a single conspiracy violated his double jeopardy concerns pursuant to *United States v. Rodriguez*, 525 F.3d 85, 111-12 (1st Cir. 2008). (Cr. ECF No. 3945); *United States v. Resto-Figueroa*, No. CR 15-462 (JAG), 2018 WL 10456455 (D.P.R. May 10, 2018).

Supreme Court denied certiorari on November 15, 2021. *Velazquez-Fontanez v. United States*, 142 S. Ct. 500 (2021).

On May 16, 2022, Velázquez requested court appointed counsel to assist him in filing a § 2255 motion. (Cr. ECF No. 4507). Counsel was appointed about three months later – August 9, 2022. (Cr. ECF No. 4540). The Court appointed counsel then sought to withdraw due to conflict. (Cr. ECF No. 4567). Current counsel was appointed October 11, 2022. (Cr. ECF No. 4570). The statute of limitations for filing the § 2255 expired on November 14, 2022. The Court determined that equitable tolling applied to Velázquez's case and the deadline for the § 2255 motion was extended to January 9, 2023. (Cr. ECF No. 4572). On January 9, 2023, Velázquez filed a motion for extension of time until March 10, 2023, which the Court granted. (Cr. ECF No. 4586 & 4587). On March 10, 2023, Velázquez filed the pending § 2255 motion.[3] (Cv. ECF No. 1).

## DISCUSSION

Velázquez alleges that counsel was ineffective for his failure to: (1) "object [to] the Court's decision allowing for supplementary jury instructions as to alibi in conjunction with aid and abet instructions, ultimately resulting in a conviction as to count four" (Cv. ECF No. 1 at 6); and (2) "object [to] the Court's response to the jurors which lacked clarification as to the meaning of conspiracy, eventually resulting in a conviction as to count two" (*Id.* at 9). Velázquez claims that the Court denied him effective assistance of counsel for denying his pro se motions for new counsel. (*Id.* at 10). Lastly, Velázquez rapid fires several allegations against counsel, which he fails to develop. (*Id.* at 11). The record belies Velázquez's claims and, where it does not, his claims

---

[3] While the government does not believe that exceptional circumstances warrant equitably tolling the limitations period were present, based on the particular circumstances, including procedural events within the limitations period, and the readily apparent lack of merit in the allegations, the government will not press untimeliness.

are meritless.

## I. Velázquez received effective assistance of counsel.

### a. Standard for ineffective assistance of counsel claims

An ineffective assistance of counsel claim requires a showing that (1) "counsel's performance was deficient" and (2) "the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The proper measure for attorney performance is "reasonableness under prevailing professional norms." *Id.* at 688. Counsel is "strongly presumed" to have rendered adequate assistance and to have exercised reasonable professional judgment. *Id.* at 690. If the defendant fails to carry his burden of proof as to either requirement, the claim fails. *Id.* at 697; *see also Scarpa v. Dubois*, 38 F.3d 1, 8-9 (1st Cir. 1994) ("A defendant who alleges ineffective assistance of counsel must carry the devoir of persuasion on both tiers of the *Strickland* test."). Therefore, a court is free to tackle either prong first. *United States v. Carrigan*, 724 F.3d 39, 44 (1st Cir. 2013).

To establish the deficient performance prong, the defendant must show that counsel's representation "fell below an objective standard of reasonableness." *Moreno-Espada v. United States*, 666 F.3d 60, 64 (1st Cir. 2012). This assessment must be "fairly tolerant" because "the Constitution pledges to an accused an effective defense, not necessarily a perfect defense or a successful defense." *Id.* at 65 (quoting *Scarpa*, 38 F.3d at 8). Furthermore, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690; *see also Harrington v. Richter*, 562 U.S. 86, 104 (2011). Thus, defense counsel's performance shall only be deemed deficient when "given the facts known at the time, counsel's choice was so patently unreasonable that no competent attorney would have made it." *Tevlin v. Spencer*, 621 F.3d 59, 66 (1st Cir. 2010) (citing

9

*Knight v. Spencer*, 447 F.3d 6, 15 (1st Cir. 2006)). As recently reiterated by the First Circuit, "[o]nly when counsel's strategy was 'so patently unreasonable that no competent attorney would have made it' may we hold such performance as deficient. 'Review of counsel's performance must be deferential, and reasonableness must be considered in light of prevailing professional norms.'" *Watson v. United States*, 37 F.4th 22, 28 (1st Cir. 2022) (internal citations omitted).

Meanwhile, "[t]he requisite showing of prejudice requires more than postulating that counsel's 'errors had some conceivable effect on the outcome of the proceeding.'" *Argencourt*, 78 F.3d at 16 (quoting *Strickland*, 466 U.S. at 693). This "presents a high hurdle." *Id*. "*Strickland* places the burden on the defendant, not the [government], to show a reasonable probability that the result would have been different." *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (*per curiam*) (internal quotation marks omitted); *see Wilder v. United States*, 806 F.3d 653, 658 (1st Cir. 2015). Under *Strickland,* "[a] reasonable probability is one 'sufficient to undermine confidence in the outcome.'" *Turner v. United States*, 699 F.3d 578, 584 (1st Cir. 2012) (quoting *González-Soberal v. United States*, 244 F.3d 273, 278 (1st Cir. 2001)); *see Strickland*, 466 U.S. at 694. "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691; *see Bobby v. Van Hook*, 558 U.S. 4, 12–13 (2009) (*per curiam*). "In weighing the prejudicial effect of counsel's errors, [this Court] must consider the totality of the evidence before the judge or jury." *Turner*, 699 F.3d at 584.

1. **Clarification on the meaning of the word "presence"**

Velázquez's claim that counsel was ineffective for not objecting to supplementary jury instructions on presence fails. Counsel objected to further instruction and clarification requested by the government, requesting instead that the Court stick to the pattern instruction. (Cr. ECF No.

3823 at 10-12). And that is precisely what the Court did. The Court referenced the original jury instruction without modification and referenced the previously given aiding and abetting instruction. Counsel agreed with this response. (*Id.* at 12). Velázquez's argument now is wholly without merit. There was no new instruction for Velázquez to object. The Court simply referred the jury back to its correct instructions. Velázquez cannot "show that no competent lawyer would have reasonably permitted these instructions to be given without objection." *Lynch v. Ficco*, 438 F.3d 35, 49 (1st Cir. 2006). Here, upon the jury's question, the government, recognizing the tension between the alibi and aiding and abetting instructions, requested supplemental jury instruction stating "presence does not require physical presence. Please refer to instruction on aiding and abetting in regards to that." (Cr. ECF No. 3823 at 12). Velázquez, through counsel, instantly objected and stated it would be "illogical that presence does not require physical presence." (*Id.* at 13). The Court then agreed to pair instructions 34 and 44. At which point, counsel said, "no objection." (*Id.*). Simply put, counsel only withdrew his objection when the Court accepted his position. *See Velazquez-Fontanez*, 6 F.th 205 at 229 (observing counsel waived his objection after the Court's proposed response "aligned with [his] request").

Moreover, the Court simply referred the jury back to its original instructions. Velázquez has presented no argument as to why those instructions are incorrect, waiving it.[4] *See Acha v. United States,* 910 F.2d 28, 32 (1st Cir. 1990) (failure to raise meritless claims does not constitute ineffective assistance of counsel). Nor could he. Those instructions correctly provide the elements for both aiding and abetting and an alibi defense.

---

[4] The correctness of the aiding and abetting instruction is underscored by Velázquez's confusing argument that counsel was deficient for "fail[ing] to request a liability theory for aiding & abetting instructions under *United States v. Rosemond*, 134 S. Ct. 1240, 188 L. Ed. 2d 248 (2014)." (Cv. ECF No. 1 at 11).

Nor can Velázquez show he was prejudiced. For starters, the instructions were correct. Second, Velázquez's argument that the Court then failed to remind the jury of its obligation to find his "knowing and intentional involvement" in the drive-by-shooting (Cv. ECF No. 1 at 7), is contradicted by the record. The Court's aiding and abetting instruction required that the jury find that Velázquez "intentionally" "help[ed] someone else commit the charged crime." (Cr. ECF No. 3822 at 52). In fact, the jury was told that to convict Velázquez, they had to find he "made an affirmative act to help or cause the charged crime" and "intended to help or cause the commission of the charged crime." (Cr. ECF No. 3822). Thus, the jury was left with no doubt as to the requirements to convict him as an aider and abettor.

Moreover, the clarification here was no surprise and appropriate under the circumstances. *See United States v. Owens*, 298 Fed. Appx. 505 (7th Cir. 2008) (unpublished) (noting that an alibi instruction paired with an aid and abet instruction has the potential to confuse the jury to believe that presence is needed to convict of aiding and abetting). The evidence here was that Velázquez "spotted" the targets for the shooting, "and then he went elsewhere to hear the shots." (Cr. ECF No. 3823 at 11). As the government explained, and as the Court recognized, although there was evidence from which the jury could infer that Velázquez was present in Tortuga shortly before the shootings – after all, he described Prieto-Pincho ("the big guy") and stated that he was "speaking over the phone," 3 Tr. 12-13; *see also* 3 Tr. 15, 9 Tr. 50 – a reasonable jury could have construed the word "presence" to require a finding that Velázquez was physically present at the moment the shooting took place. That interpretation would have been underinclusive, however, because it would not have accounted for the possibility that he was culpable as an aider or abettor – an alternative theory of liability amply supported by the evidence that he facilitated the killings and whose applicability did not depend on his actual physical presence when the fatal shots were fired.

12

*See* 16 Tr. 88 (government's closing argument states that "[t]he evidence showed that defendant Carlos Velazquez-Fontanez aided and abetted other members of La Rompe ONU to successfully execute these murders").

By referring to both the alibi and aiding and abetting instructions, the Court properly clarified that "presence" was not synonymous with physical presence, and that Instruction 44 should be read alongside Instruction 34 defining accessory liability. *See United States* v. *Goris*, 876 F.3d 40, 47-48 (1st Cir. 2017) (holding that a clarifying instruction was appropriate when read alongside of other instructions). Indeed, in *United States* v. *Andrade*, 135 F.3d 104 (1st Cir. 1998), the defendant challenged a supplemental instruction clarifying that he could be convicted for "transporting" firearms across state lines, even if he did not personally move the guns himself, so long as the jury agreed that the evidence showed that he caused someone to transport the firearms on his behalf. *Id*. at 110-111. The First Circuit held that the supplemental instruction was appropriate because it was a "legally correct" statement of the law that clarified for the jury the application of accessory liability to the charged crime. *Id*. The same holds true here. Consequently, Velázquez cannot meet either of *Strickland's* prongs.

2. **Clarification of the meaning of conspiracy**

Velázquez's claim that counsel was ineffective because he failed to object to the Court's response to the jury question asking for clarification regarding conspiracy fares no better. The Court simply directed the jury to its previous conspiracy instruction. And the Court of Appeals found no abuse of discretion. *Velazquez-Fontanez*, 6 F.th 205 at 228 ("we typically do not fault a district court for declining to expand upon its 'initial, entirely correct instructions' and instead 'refer[ring] the jury to the original formulation'"). Indeed, the Court properly referred the jury back to the original instructions. *See United States* v. *Winter*, 663 F.2d 1120, 1143 (1st Cir. 1981) ("A

jury request for clarification of an instruction of a legal definition already given is particularly difficult to satisfy when, as here, the original was complete and essentially correct."). And the Court should reject his attempt to relitigate these settled issues under the guise of ineffective assistance of counsel. *United States v. Michaud*, 901 F.2d 5, 6 (1st Cir. 1990) (*per curiam*) (noting that "claims raised in the § 2255 motion were decided on direct appeal and may not be relitigated under a different label on collateral review"); *Singleton v. United States,* 26 F.3d 233, 240 (1st Cir. 1994) ("[I]ssues disposed of in a prior appeal will not be reviewed again by way of a 28 U.S.C. § 2255 motion.") (quoting *Dirring v. United States*, 370 F.2d 862, 864 (1st Cir. 1967)).

## II. Velázquez's Sixth amendment claim is procedurally defaulted, suffers from lack of development, and is contradicted by the record.

Velázquez claims the district court violated his Sixth amendment rights by denying his request for new appointment of counsel. (Cv. ECF No. 1 at 10). Yet he failed to raise this claim on appeal and has therefore procedurally defaulted it. "Habeas review is an extraordinary remedy and will not be allowed to do service for an appeal." *Bousley v. United States*, 523 U.S. 614, 621 (1998).

To cure his default, Velázquez must first demonstrate either "cause" and "actual prejudice," or that he is "actually innocent." *Bucci v. United States*, 662 F.3d 18, 29 (1st Cir. 2011). Velázquez, however, does not acknowledge his default, let alone argue that it should be excused waiving the claim. *See United States v. Zannino,* 895 F.2d 1, 17 (1st Cir. 1990) (stating that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). *See also United States v. Nishnianidze,* 342 F.3d 6, 18 (1st Cir. 2003) (holding that the pro se appellant had "waived" his argument because it was not developed); *David v. United States*, 134 F.3d 470, 474 (1st Cir. 1998) ("The burden is on the petitioner to make out a

14

case for section 2255 relief."). Velázquez cannot meet either threshold. Indeed, there was no impediment to Velázquez raising the claim on appeal, nor did he attempt to explain one.

Moreover, Velázquez's contention that the Court did not entertain his request is refuted by the record. The Court held a hearing for the sole purpose of addressing Velázquez's concerns. (Cr. ECF No. 353). At the hearing, the Court discussed the matter directly with Velázquez and his counsel, at the end of which Velázquez ultimately expressed that he understood counsel was there to defend him. (Add. at 10). The Court went so far as to consider Velázquez's desire to receive bail and, after hearing a proffer of the evidence from the government, indicated he would deny any request for bail based on the facts of the case. This was precisely as counsel had advanced Velázquez. Velázquez did not again raise any concern with counsel's representation.

In conjunction with this claim, Velázquez brings three final ineffective assistance of counsel contentions under the umbrella of his Sixth amendment claim. But it is unclear whether he states them as evidence that the Court denied him the right of effective assistance of counsel or, alternatively, as separate ineffective assistance claims. He claims that: (1) counsel failed to challenge the sufficiency of the evidence for his conviction as to count five; (2) failed to pursue an interlocutory appeal challenging the denial of the trial court for a specific jury verdict; (3) failed to pursue a liability theory for aiding and abetting instructions under *United States v. Rosemond*, 134 S. Ct. 1240 (2014). These fail because they are undeveloped. *See Zannino*, 895 F.2d at 17. Velázquez also provides no citation to the record.

Nevertheless, Velázquez cannot show counsel was ineffective. To start, the First Circuit already addressed the sufficiency of the evidence. In doing so, they recognize that "[e]ach defendant timely moved pursuant to Fed. R. Crim. P. 29 to challenge the sufficiency of the evidence against him" and treated those claims as preserved. *Velázquez-Fontanez,* 6 F.4th 205 at

212. And they affirmed. *Velázquez-Fontanez,* 6 F.4th 205 at 218-19. Second, it is unclear what interlocutory appeal counsel should have brought, under what authority, and why that claim so out of the ordinary that it could not be brought on direct appeal. Without more, the Court should deem this contention waived. *Zannino,* 895 F.2d at 17. Finally, *Rosemond* added an advanced knowledge requirement for aiding and abetting liability. *Rosemond v. United States*, 572 U.S. 65, 81 (2014). The jury instructions in this case specifically stated "the third element, the 'intent' element, is satisfied if the defendant had advance knowledge of the facts that make the principal's conduct criminal. 'Advance knowledge' means knowledge at a time the defendant can opt to walk away." (Cr. ECF No. 3859 at 53; 3822 at 53); *Rosemond,* 572 U.S. at 82. This is precisely what *Rosemond* required. Consequently, there is no merit to Velázquez's claim.

### III. Certificate of Appealability

Finally, because Velázquez has failed to make a substantial showing of a denial of a constitutional right, the Court should decline to issue a certificate of appealability in the event he makes such a request.

**WHEREFORE**, in view of the foregoing the government submits that Velázquez's § 2255 petition should be denied and the case dismissed with prejudice.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, this 13th day of October, 2023.

W. STEPHEN MULDROW
United States Attorney

/s/ Mariana E. Bauzá-Almonte
Mariana E. Bauzá-Almonte – G00309
Assistant United States Attorney
Chief, Appellate Division
United States Attorney's Office
Torre Chardón, Suite 1201

350 Carlos Chardón Ave.
San Juan, Puerto Rico 00918
Tel. (787) 766-5656

## **CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that the foregoing document was uploaded today October 13, 2023, into the Court's website using the CM/ECF system, which will send notification of such filing to counsels of record.

/s/ Mariana E. Bauzá-Almonte
Assistant United States Attorney